UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JONATHAN JOSEPH GOOD,

                    Plaintiff,                    Case No. 2:24-cv-33

v.                                                Honorable Maarten Vermaat

UNKNOWN LATOSKI et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court grants Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Defendants Smith and Schiebner will be dismissed without prejudice as misjoined. In addition, Plaintiff's due process and official capacity claims against Defendant Knapp will be dismissed with prejudice for failing to state a claim. Plaintiff's Eighth Amendment and retaliation claims against Defendant Latoski and his retaliation claim against Defendant Knapp remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

<u>Discussion</u>

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility and the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues LMF Corrections Officer Unknown Latoski in his individual capacity. Plaintiff also sues MCF employees: Captain Unknown Knapp in his individual and official capacities, Recreation Director L. Smith in her individual capacity, and Warden James Schiebner in his individual and official capacity.

In his amended complaint, Plaintiff alleges that on October 6, 2022, LMF Nurse Practitioner Amy Westcomb prescribed a low sodium medical diet for Plaintiff because of his heart condition. (ECF No. 5, PageID.146.) Plaintiff states that on October 15, 2022, Defendant Latoski knocked on his cell door while he was eating his meal and yelled Plaintiff's name. Plaintiff approached the door and Defendant Latoski immediately accused Plaintiff of leaving the food slot open. Plaintiff explained that he had been in his cell and could not have opened the food slot. Defendant Latoski asked how it had been opened and Plaintiff pointed to his tray, asking how he could have gotten the meal if his food slot had been closed. Defendant Latoski then stormed off down the hall. (*Id.*, PageID.146-147.)

Plaintiff states that prisoner Todd Lutz later told him that he overheard Defendant Latoski telling kitchen workers that Plaintiff had reported them for leaving his food slot open and that Defendant Latoski stated that if it continued, he would be taking their jobs. (*Id.*) Following that conversation, prisoner Lutz heard kitchen workers referring to Plaintiff as a "rat." (*Id.*) Prisoner Lutz also told Plaintiff that one kitchen worker said that if he lost his job "because of that 'rat' he [was] going to the box for f**king him up." (*Id.*)

4

The next day, a kitchen worker who was unknown to Plaintiff brought him his meal. This kitchen worker told Plaintiff that Defendant Latoski was claiming that Plaintiff had "ratted" the workers out for leaving the food slot open. (*Id.*) This prompted Plaintiff to write a grievance on Defendant Latoski for labeling him a rat and placing Plaintiff in danger of being assaulted. (*Id.*, PageID.148.) On October 28, 2022, Plaintiff was called to the lobby to meet with Sergeant Perry (not a defendant) regarding the grievance. Sergeant Perry told Plaintiff that he had spoken to Defendant Latoski and told him not to "do that again." (*Id.*) Plaintiff made it clear that he was not going to sign off on the grievance because Defendant Latoski had a history of retaliating even when a grievance had been resolved. (*Id.*)

On October 29, 2022, Sergeant Mann (not a defendant) told Plaintiff that he had a misconduct to review with him. (*Id.*, PageID.149.) Sergeant Mann reviewed a class II misconduct with Plaintiff at the officers' station in the presence of Defendant Latoski and Sergeant Perry. The ticket charged Plaintiff with destruction or misuse of the food slot and stated that Plaintiff had his food slot open without staff authorization. (*Id.*)

In addressing the charge, Plaintiff pointed out that there was no allegation in the body of the misconduct that he had destroyed or misused the food slot. Plaintiff also asserted that the misconduct was in retaliation for his grievance. (*Id.*) However, Sergeant Mann refused to write Plaintiff's comments on the misconduct and told Plaintiff to inform the Hearing Investigator, which Sergeant Mann knew was not available for class II misconducts. (*Id.*) Plaintiff prepared a three-page defense of the misconduct, asserting retaliation, insufficiency of the evidence, and asking that the video evidence be preserved because it would show that Plaintiff did not touch his food slot. Plaintiff mailed it to the office of the investigator at LMF. (*Id.*, PageID.150.) Plaintiff also memorialized the events of October 28 and 29, 2022, in a Jpay message. (*Id.*) Plaintiff states

5

that on October 31, 2022, he was screened for a transfer. Plaintiff heard Defendant Latoski talking

and laughing about how Plaintiff would get a "shit load of sanctions" at his new facility. (*Id.*)

The following day, Plaintiff was transferred and arrived at MCF on November 1, 2022.

(*Id.*) Plaintiff was called to the MCF control center on November 3, 2022, for a hearing on the

misconduct written by Defendant Latoski. Plaintiff immediately told Defendant Knapp that he was

pleading not guilty and had prepared a defense. (*Id.*) Plaintiff asked Defendant Knapp if he had

received the defense packet from the hearing investigator at LMF, and Defendant Knapp stated

that he had not. (*Id.*) Plaintiff gave Defendant Knapp a duplicate defense packet. (*Id.*) Defendant

Knapp quickly looked over the materials and told Plaintiff that he "only gives prisoners 49 percent

in relation to the preponderance burden and officers 51 percent, so in this case the ticket is enough."

(*Id.*, PageID.151.)

Plaintiff immediately asserted that the video evidence should show that he did not touch

the food slot. Defendant Knapp responded that he did not care, and that Plaintiff would serve all

of his sanction before anything could be done about an appeal or law suit. (*Id.*) Defendant Knapp

stated: "When are you prisoners going to learn that anytime you write a grievance on an officer,

and he writes a ticket in response, [you're] going to get the worst of it[?]" (*Id.*) Defendant Knapp

said that he was going to impose ten days loss of privileges and Plaintiff objected, stating that he

was going to file a lawsuit. Defendant Knapp then stated that Plaintiff would get even more

sanctions for his comments. (*Id.*)

Defendant Knapp indicated that he would not file the defense materials with the

misconduct, so Plaintiff retrieved them and left the office. (*Id.*) On November 7, 2022, Plaintiff

got a copy of the hearing report and noticed that Defendant Knapp had given him ten days loss of

privileges and five days on top lock. (*Id.*, PageID.151-152.) Plaintiff filed an appeal, but Deputy

Warden J. Kludy (not a defendant) falsely stated that Plaintiff had not included a copy of the misconduct and hearing report. (*Id.*, PageID.152.)

On December 8, 2022, Plaintiff contacted Defendant Schiebner and expressed concern about the rule, asking that the rule be waived so that Plaintiff could work on bettering his health. (*Id.*, PageID.153.) Plaintiff wrote a grievance on both Defendants Smith and Schiebner, which was rejected as vague and extraneous. (*Id.*)

Plaintiff served his sanctions and upon completion asked Defendant Smith to be placed on callout for the Weight Pit and Leisure Time Activities. Defendant Smith responded by stating that under the 90 Day Ticket Free Rule, Plaintiff must be ticket free for 90 days before he could be placed on callout. (*Id.*) Plaintiff states that this rule was the subject of a memorandum and that MDOC policy prohibits the enforcement of memorandum rules. (*Id.*) Plaintiff states that he informed Defendant Smith of his heart condition, but that Defendant Smith nonetheless enforced the 90 Day Ticket Free Rule against Plaintiff. (*Id.*) Plaintiff filed a grievance which was rejected as vague and extraneous. (*Id.*)

After 90 days had elapsed, Plaintiff sent in a number of requests for the Weight Pit and Leisure Time Activity callouts. In response, he received a sanction sheet printout from Defendant Smith showing that Defendant Smith increased the ticket free period requirement to six months. Plaintiff asserts that this was an obvious act of retaliation. (*Id.*) On March 7, 2023, Plaintiff contacted Defendant Smith and told her that if she did not discontinue her reliance on the ticket free period rule, he would grieve her. (*Id.*, PageID.153-154.) Plaintiff received no response, so he filed a grievance. At step I, Classification Director Kitchens (not a defendant) stated that Defendants Smith and Schiebner were relying on a memorandum from March 25, 2016. (*Id.*,

PageID.154.) Plaintiff filed a step II appeal, which Defendant Schiebner denied stated that there was no violation of policy or procedure. (*Id.*)

Plaintiff asserts claims of retaliation, deliberate indifference, a violation of due process, and "municipal liability." Plaintiff seeks compensatory, punitive, and exemplary damages, as well as injunctive relief. (*Id.*, PageID.155-164.)

## II.    Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states:  "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009),

*and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–137 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was

also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of

obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Defendant Latoski is the first Defendant named in the action. Plaintiff asserts that Defendant Latoski acted with deliberate indifference in labeling him as a rat and then retaliated against Plaintiff for filing a grievance on him by writing a misconduct ticket and elevating the charge to a class II misconduct. Defendant Knapp is the second Defendant named in the action. Plaintiff also claims that Defendant Knapp retaliated against him for writing a grievance on Defendant Latoski. Plaintiff makes no allegations against any other Defendant that are related to his grievance on Defendant Latoski. As a result, no claim against any of the other Defendants is transactionally related to his claim against Defendants Latoski and Knapp.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848

F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

> exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id.* at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff alleges conduct by MCF Defendants Smith and Schiebner that began in early December, 2022 and continued until the middle of March, 2023. With the benefit of tolling during the administrative-exhaustion period, *Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has more than enough time in his limitations period to file a new complaint against Defendants Smith and Schiebner.[2] Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dropped and Plaintiff's claims against them dismissed without prejudice.

---

[2] It is not clear from the complaint and attachments how long the period of limitations was tolled for the purpose of exhaustion. However, Plaintiff is entitled to more than two months of tolling for the period during which this action was pending, beginning on the date his original complaint was filed—on or about March 1, 2024, the date on which he signed it—until the date of entry of this opinion and order. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that a prisoner's complaint is deemed filed on the date it is signed).

The Court therefore will exercise its discretion under Rule 21 and drop MCF Defendants Smith and Schiebner and dismiss Plaintiff's claims against them without prejudice to the institution of a new, separate lawsuit by Plaintiff against Defendants Smith and Schiebner. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same). If Plaintiff wishes to proceed with his claims against Defendants Smith and Schiebner, he shall do so by filing a new civil action on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.

The Court directs the Clerk to send to Plaintiff one copy of the form complaint under 42 U.S.C. § 1983 for a civil action by a person in state custody.

## III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

14

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Defendant Latoski

#### 1.  Deliberate Indifference

Plaintiff alleges that Defendant Latoski told kitchen workers, who were inmates, that Plaintiff had reported them for leaving his food slot open and threatened to take their jobs. Plaintiff states that this resulted in him being labeled a "rat," which placed him in danger of being assaulted. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal

civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial

risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

As noted above, Plaintiff claims that Defendant Latoski placed him in danger when he told other inmates that Plaintiff had reported them for leaving his food slot open and then threatened them with losing their jobs. It is well-established that labeling an inmate a rat or snitch in the prison setting can have serious consequences and differ from other offensive terms. *O'Neal v. Lemmerman*, No. 2:19-CV-32, 2021 WL 3615851, at *2 (W.D. Mich. Aug. 16, 2021) (citing *Miller v. Leathers*, 913 F.2d 1085, 1088 n.* (4th Cir. 1990)). Plaintiff alleges that kitchen workers subsequently began calling Plaintiff a rat and that at least one of them threatened to "go to the box for f**king [Plaintiff] up." (ECF No. 5, PageID.147.) Although Plaintiff's Eighth Amendment

17

claim against Defendant Latoski is somewhat conclusory, the Court concludes that at this stage in the litigation, it is not properly dismissed.

2. Retaliation

Plaintiff asserts that Defendant Latoski retaliated against him for his use of the grievance procedure. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff's allegations, if true, sufficiently support a finding that he was engaged in protected conduct for purposes of a retaliation claim.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not

18

show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Plaintiff states that he received a class II misconduct ticket after refusing to sign off on the grievance, and that he was subsequently transferred to MCF.

Plaintiff's transfer was from one level II facility to another level II facility. Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that the conditions of confinement at MCF were not comparable to those at LMF. Therefore, the Court concludes that the transfer was not adverse for purposes of a retaliation claim.

However, Plaintiff also claims that his class II misconduct, which resulted in ten days loss of privileges and five days on top lock, was retaliatory. Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")). Therefore, Plaintiff has alleged sufficient facts to show that Defendant Latoski took an adverse action against him.

Finally, the Court notes that Plaintiff alleges that Defendant Latoski only wrote the misconduct ticket after he refused to sign off on the grievance on October 28, 20222. The very next day, on October 29, 2022, Sergeant Mann reviewed a class II misconduct with Plaintiff at the officers' station in the presence of Defendant Latoski and Sergeant Perry. Plaintiff also states that on October 31, 2022, he heard Defendant Latoski talking and laughing about how Plaintiff would

get a "shit load of sanctions" at his new facility. Therefore, the Court concludes that at this point in the litigation, Plaintiff's retaliation claim against Defendant Latoski is not properly dismissed.

### B. **Defendant Knapp**

#### 1. Retaliation

Plaintiff also claims that Defendant Knapp retaliated against him. As set forth above, Plaintiff asserts that during his hearing on the misconduct written by Defendant Latoski, Defendant Knapp stated that he did not care about the evidence and asked, "[w]hen are you prisoners going to learn that anytime you write a grievance on an officer, and he writes a ticket in response, [you're] going to get the worst of it[?]" (ECF No. 5, PageID.151.) Defendant Knapp said that he was going to impose ten days loss of privileges and Plaintiff objected, stating that he was going to file a lawsuit. Defendant Knapp then stated that Plaintiff would get even more sanctions for his comments. (*Id.*) On November 7, 2022, Plaintiff got a copy of the hearing report and noticed that Defendant Knapp had given him ten days loss of privileges and five days on top lock. (*Id.*, PageID.151-152.) The Court concludes that Plaintiff has stated sufficient facts to support a retaliation claim against Defendant Knapp at this stage in the litigation.

#### 2. Due process

To the extent that Plaintiff is asserting a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause with respect to Defendant Knapp's handling of his class II misconduct, this claim lacks merit. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks

whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. At the time of the misconduct charge, Plaintiff was serving two life sentences[3]  and twenty-two indeterminate sentences for offenses committed in 2007 and 2008. *See* MDOC Offender Tracking Information Service, https://mdocweb.state.mi.us/

---

[3] Although it is clear that Plaintiff was sentenced to life imprisonment for his convictions of conspiracy to commit first-degree murder, it is not apparent whether the sentencing were parolable. At the time Plaintiff committed those offenses, the first-degree murder statute did not clearly mandate a sentence of life without parole for that offense. *See, e.g., People v. Jahner*, 446 N.W.2d 151 (Mich. 1989). The legislature amended the statute to create that mandate in 2014. *Dupree v. Skipper*, No. 1:21-cv-611, 2023 WL 6139395, at *20–21 (W.D.Mich. Sept. 20, 2023).

OTIS2/otis2profile.aspx?mdocNumber=197972. An individual who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Moreover, "disciplinary time" accumulates only for a "major misconduct." Mich. Comp. Laws § 800.34(1).[4] The misconduct at issue here is a minor misconduct.

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." A penalty of ten days loss of privileges and five days on top lock does not amount to an atypical or significant hardship. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018) (14 day loss of privileges is not atypical and significant); *Graham v. Chicowski*, No. 18-2049, 2019 WL 4381841, at *5 (6th Cir. May 3, 2019) (13 days on toplock is not atypical and significant); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000) (15 day loss of privileges is not atypical and significant); *Dixon v. Morrison*, No. 1:13-cv-1078, 2013 WL 6512981 at *7 (W.D. Mich. December 12, 2013) (2 days on toplock is not atypical and significant).

---

[4] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252 and all requirements currently set forth in Administrative Rules and policy directives for Class I 'major' misconduct," Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Administrative Rules and policy directives for 'minor' misconducts." MDOC P.D. 03.03.105 ¶ C (eff. date 06/17/24).

Even the more restrictive environment of administrative segregation is not necessarily atypical and significant; rather, it "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest). Plaintiff in this

23

case fails to allege any facts regarding the nature and duration of his confinement which would implicate a liberty interest. Because Plaintiff fails to allege that he was deprived of a protected liberty or property right, his due process claims will be dismissed.

### 3.  Official capacity

To the extent that Plaintiff is suing Defendant Knapp in his official capacity, the Court notes that a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). The only relief Plaintiff is seeking with respect to Defendant Knapp is money damages. (ECF No. 5, PageID.164.) Therefore, the Court will also dismiss Plaintiff's official capacity claims against Defendant Knapp.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Smith and Schiebner will be dropped as parties due to misjoinder and Plaintiff's claims against them will be dismissed without prejudice. In addition, Plaintiff's due process and official capacity claims against Defendant Knapp will be dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment and retaliation claims against Defendant Latoski and his retaliation claim against Defendant Knapp remain in the case.

An order consistent with this opinion will be entered.


Dated:  July 12, 2024                          /s/ *Maarten Vermaat*
                                                       Maarten Vermaat
                                                       United States Magistrate Judge